## Commonwealth v. Meckes et al.

*Fred W. Davis*, for Commonwealth.

*F. J. Mervine*, for defendants.

SHULL, P. J., April 8, 1940.—This matter comes before the court upon a certiorari directed to J. T. Hauser, a Justice of the Peace of the Borough of Delaware Water Gap, Monroe County, Pa.

The exceptions upon which the certiorari is based are:

"1. The information charges no offense under the Game Laws of Pennsylvania.

"2. The transcript of the justice does not disclose that any offense was committed by defendants in Monroe County nor within the jurisdiction of the said justice.

"3. The information charges a joint offense against defendants but the record fails to disclose that any such joint offense was proved against them.

"4. It is impossible to ascertain from the transcript which of the defendants, if either, violated the Game Laws.

"5. The transcript of the justice discloses no evidence upon which either or both of the defendants could be convicted.

"6. Section 706 of the Game Laws, of which defendants were convicted, is unconstitutional and void in that it violates the Fourteenth Amendment of the United States Constitution and is an unlawful delegation of legislative powers, thereby violating article II, sec. 1, of the Constitution of Pennsylvania.

"7. The record fails to disclose that the justice found defendants guilty of any offense under the Game Laws and he consequently erred in imposing a fine and costs upon them.

"8. The justice's transcript is in many other respects defective, irregular, and void as will appear by an examination thereof."

As to the first exception, which is: "The information charges no offense under the Game Laws of Pennsylvania"; we find that section 706 of The Game Law of June 3, 1937, P. L. 1225, provides:

"The possession or control of any big game animal or any portion of such animal shall be prima facie evidence that it was killed unlawfully in this Commonwealth, unless the head is attached in a natural way. Each person in whose possession or under whose control the same may be found, or who may be proven to have had such animal, or part thereof, in possession or under control, shall be liable to the penalty provided in this article for the unlawful killing of such big game, unless such person shall immediately, upon demand made by an officer of the Commonwealth whose duty it is to protect game, produce the head or other satisfactory evidence that the flesh in question, found in his possession or proven to have been under his control, is a part of a big game animal legally killed in the Commonwealth."

The theory advanced by defendants' counsel is in a way ingenious though, as we view it, absolutely unsound. Section 706 provides:

"The possession or control of any big game animal *or of any portion of such animal. . . .* Each person in whose possession *or under whose control* the same may be found . . . in possession *or under control, shall be liable to the penalty provided* in this article for the unlawful killing of such big game. . . ." (Italics supplied.)

Surely, it cannot successfully be contended that this section does not clearly designate something, the doing of which is an offense against the law. Possessing or having under control any part of a big game animal without having attached to it, in a natural way, the head, is the offense provided, and for this offense this section directly provides a penalty. The penalty is provided by reference, it is true, but that is well within the legislative power— many of our acts refer to other sections of the act for the penalty—others have one section which provides penalties for the various offenses prescribed in the body of the act. This is not unusual and, as we view it, fully within the power of the legislature.

Counsel for defendants urges, relative to this section, that "it is merely a statute setting forth a rule of evidence to be followed in the prosecution of violations of the other sections of the Game Laws," but this position is untenable. The provisions of this section are almost identical with the provisions which were in the act providing against the carrying of concealed deadly weapons, which was enforced prior to the passage of the act relative to firearms now in force.

As to the second and seventh exceptions, to wit: "2. The transcript of the justice does not disclose that any offense was committed by defendants in Monroe County nor within the jurisdiction of the said justice;" "7. The record fails to disclose that the justice found defendants guilty of any offense under the Game Laws and he consequently erred in imposing a fine and costs upon them;" these also are based upon unsound propositions. The test is not the transcript of the justice's docket, but the entire record. The information clearly sets forth that the al-

leged offense was committed in the Township of Eldred, County of Monroe, Commonwealth of Pennsylvania. This information is before us and is attached to the transcript of the justice of the peace and is a part of the record, and this is sufficient. See Commonwealth v. Dukehart, 17 Pa. Superior Ct. 74, and Commonwealth v. Tryman, 62 Pa. Superior Ct. 241.

As to the third, fourth, and fifth exceptions to this record, as we view it, there is evidence set forth in this transcript of the justice's docket under which it readily could be concluded that defendants jointly had control of the hide of this deer, and that the head was not attached in a natural way. The hide is a part of the deer. We feel it is sufficient to sustain the record of the justice of the peace.

As to the sixth exception, that section 706 of the Act of 1937, as amended by the Act of 1939, is unconstitutional, and urging that it is unconstitutional for the same reason that this court held section 706 of The Game Law of May 24, 1923, P. L. 359, to be unconstitutional in the case of Commonwealth v. Madison, 16 D. & C. 824, we feel this case is not in point. On the other hand, the Commonwealth urges that it is constitutional, urging in support the cases of Commonwealth v. Gould, 18 D. & C. 135, and Commonwealth v. Stoner, 28 D. & C. 489, but neither of these cases is in point. All of them relate to section 706 of the Act of 1923. Section 706 of the Act of 1923 was unconstitutional because of delegation of judicial power to a peace officer, and though neither my learned contemporary Judge Lewis, in Commonwealth v. Gould, nor Judge Davison, in Commonwealth v. Stoner, agreed with that conclusion, we are decidedly convinced of the soundness of the conclusion reached in Commonwealth v. Madison. The legislature may "make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government": Locke's Appeal, 72 Pa. 491, 498. Still, when

the legislature delegates power, it may delegate it only to that branch of the government to which our Constitution says that type of power belongs—and passing upon the sufficiency of evidence clearly belongs to the judicial side of government, and it seems to us to be quite significant that the advisers of the Game Commission and of the legislature, when the act now before us, to wit, the Act of 1937, was being prepared and reënacted, saw fit to eliminate this delegation of power from section 706, and the particular provision in the Act of 1923 is conspicuous by its absence, as under the present section there is no provision delegating to a game warden or a game protector the power of passing upon the sufficiency of evidence to convict. Under this act, this power remains in the judiciary where, under our Constitution, it belongs.

Counsel for defendants, in urging the unconstitutionality of the act now before us, states, "Prior to its amendment, section 706 read slightly different." The difference is that section 706 of The Game Law of 1923 read:

"The possession or control of a deer or elk or of any portion of either of such animals, shall be prima facie evidence that such animal was killed unlawfully in this Commonwealth, unless the head bearing antlers as hereinbefore provided is attached in a natural way. Each person in whose possession or under whose control the same may be found, or who may be proven to have had such animal, or part thereof, in possession or under control, shall be liable to the penalty provided in this article for the unlawful killing of elk or deer, as the case may be, unless such person shall immediately, upon demand made by an officer of the Commonwealth whose duty it is to protect game, produce the head bearing such antlers, or shall swear that the flesh in question, found in his possession or proven to have been under his control, is a part of a deer or elk legally killed in the Commonwealth, both or either, as in the mind of the officer investigating may be considered necessary"; while section 706 of The Game Law of 1937 reads:

"The possession or control of any big game animal or of any portion of such animal shall be prima facie evidence that it was killed unlawfully in this Commonwealth, unless the head is attached in a natural way. Each person in whose possession or under whose control the same may be found, or who may be proven to have had such animal, or part thereof, in possession or under control, shall be liable to the penalty provided in this article for the unlawful killing of such big game, unless such person shall immediately, upon demand made by an officer of the Commonwealth whose duty it is to protect game, produce the head or other satisfactory evidence that the flesh in question, found in his possession or proven to have been under his control, is a part of a big game animal legally killed in the Commonwealth."

Under the former, a peace officer passed upon the sufficiency of the evidence to convict and by his decision the justice of the peace, in a summary conviction, and the court, upon an appeal, was bound if that act were to be given force and effect, and that is why the cases cited are not in point. They deal with a situation radically different from the one before us in this case, inasmuch as under the provisions of this act the determining of the quality and quantity of evidence is left to the judiciary, where it belongs.

As we said in the case of Commonwealth v. Jones, 1 Monroe 40, 42:

"In construing a statute it is the duty of our Court to place upon it the most reasonable construction that the language of the statute warrants. If under any reasonable construction the statute would be within the constitutional limitation upon legislation, then the Court should so construe it. While we feel that this section of the statute is poorly drawn and can not feel that it was the intention of the Legislature to confer judicial powers upon policemen, we do feel that this statute may be reasonably construed to mean that 'other satisfactory proof of inspection' may be presented by the accused at

the time of trial and, if it be satisfactory to the trial Court, that is, by its fair weight, to show that the motor vehicle had been inspected, the accused may so present it and, upon such proof, should be found not guilty of the offense of operating a motor vehicle which had not been inspected within the meaning of Sub-section H of Article VIII of the Vehicle Code."

And that is true in the case now before us.

And now, April 8, 1940, the writ of certiorari is dismised and the judgment of the justice of the peace affirmed.